Jonas Hoten WHITMORE *v.* STATE of Arkansas

CR 87-168                                    771 S.W.2d 266

Supreme Court of Arkansas
Opinion delivered May 30, 1989

56

58

*Allen & O'Hern*, by: *Arthur L. Allen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Petitioner, Jonas Hoten Whitmore, seeks post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. While seeking relief before this court, Whitmore also sought to intervene as next friend in the case of *Simmons* v. *State*, CR 89-45, so Whitmore could argue certain constitutional issues concerning whether Arkansas is required to hold appellate reviews in all capital cases, including those where the convicted defendant waives such a review. This court, finding Whitmore had no standing to intervene on behalf of Simmons, promptly denied his request. The United States Supreme Court subsequently granted Whitmore's petition for certiorari after our denial of his motion. The court also stayed the execution date for Ronald Gene Simmons.

The Whitmore and Simmons cases are further examples of a chain of Arkansas cases that reveal how the state and federal judicial systems have permitted applications for post-conviction remedies to get out of control. By our action today, we intend to limit or narrow post-conviction relief by abolishing Criminal Procedure Rule 37. As the United States Supreme Court said in *Pennsylvania* v. *Finley*, 107A S. Ct. 1990 (1987), states are not obligated to provide for post-conviction relief after the defendant has failed to secure relief through direct review of his conviction. By abolishing Rule 37, a defendant may still petition for a writ of habeas corpus — a narrower remedy than Rule 37 — but our action will at least curtail some of the abuses that result from the inconsistent and meritless claims that petitioners lodge under the broader relief afforded under Rule 37.[1]

---

[1] Arkansas courts have held that habeas corpus petitions are restricted to questions of whether the commitment is valid on its face or whether the convicting court had proper jurisdiction. *Blevins* v. *Norris*, 291 Ark. 70, 722 S.W.2d 573 (1987); *Mitchell* v. *State*, 233 Ark. 578, 346 S.W.2d 201 (1961); *State, ex rel Attorney General* v. *Auten*, 211 Ark. 703, 202 S.W.2d 763 (1947). Criminal Procedure Rule 37 provides a remedy for prisoners, under sentence of a circuit court, who allege: (a) that the sentence was imposed in violation of the Constitution and laws of the United States or Arkansas; or (b) that the court imposing sentence was without jurisdiction to do so; or (c) that the sentence was in excess of the maximum authorized by law, or (d) that the sentence is otherwise subject to

Whitmore's Rule 37 petition here and his intervention in the Simmons's case, now pending in the United States Supreme Court, depict only one of the problems — albeit an absurd one — that the courts face when attempting to bring an end to criminal cases once they are launched into the procedural appellate and post-conviction maze. In his post-conviction petition now before us, Whitmore claims that he did not receive a fair trial, because, among other things, his trial attorney was ineffective. In support of his argument, he contends his trial counsel failed to present available evidence that Whitmore had a diminished capacity when he killed his victim. Whitmore also points to his lengthy psychiatric history as well as to his alcoholism and incest and sexual abuse that occurred in his family. In sum, Whitmore objects that his trial counsel made no use of Whitmore's psychiatric evidence to show either diminished capacity as to his guilt or mitigating circumstances at the penalty phase. Further, Whitmore contends that he is presently insane. In pursuing his petition before the United States Supreme Court, Whitmore makes no mention whatsoever of his pending petition in this court and the diminished capacity claims that he asserts in the petition.

Obviously, if Whitmore has a diminished capacity or psychiatric problem, how can he have standing to intervene in behalf of Simmons? In *Rees* v. *Peyton*, 384 U.S. 312 (1966), the Supreme Court held that if a defendant is determined to be competent, then a next friend has no standing to pursue further proceedings when the defendant chooses not to proceed. *See Gilmore* v. *Utah*, 429 U.S. 1012 (1976), where the Supreme Court reversed the record bearing on Gilmore's competency and decided his mother did not have standing to speak for him. Here a state trial court, this court and a federal district court have either ordered psychiatric examinations or reviewed those examinations and have concluded Simmons has the capacity to waive his right to appeal or refuse to pursue any claims he may have. Nonetheless, the United States Supreme Court has allowed Whitmore, who has placed his own mental capacity in issue in a pending state proceeding, to intervene on behalf of Simmons so that Whitmore can argue claims Simmons steadfastly waives and refuses to raise. If the

collateral attack.

judicial system is to maintain its integrity, we can ill afford to permit such a willful and improper manipulation of post-conviction procedures by a defendant.

Unfortunately, other abuses of our post-conviction remedies continue to occur besides the one we have here. In our recent case of *Robertson* v. *State*, 298 Ark. 131, 765 S.W.2d 936 (1989), Justice Hickman, in a concurring opinion, recounted the history of our review of capital cases. *See also Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986) (Hickman, J., concurring), and *Ruiz & Van Denton* v. *State*, 280 Ark. 190, 655 S.W.2d 441 (1983) (Hickman, J., concurring). Justice Hickman cited capital cases that appeared to have come to the end of the direct appeal and post-conviction relief processes, only to find that the cases—some of which he identifies by name—have entered the federal judicial machinery where they seemingly disappear. As Justice Hickman noted, our court affirmed Eddie Lee Miller's conviction in 1980, but Miller filed a habeas petition in federal district court in 1981. Eight years have passed and the federal court has failed to rule on Miller's petition. Clay Anthony Ford and Darrell Wayne Hill's cases have been pending in federal district court since January 1983 and February 1983, respectively, and no final decisions, as yet, have been entered by the federal court. There are others, as well, but it is of little value to repeat here those cases already fully identified in Justice Hickman's earlier concurring opinion. Suffice it to say, that despite this court's best efforts to expedite and review these serious appeals and post-conviction petitions, these cases inevitably end up in the federal judicial system, where too often they languish.

Finally, we note the burgeoning number of post-conviction petitions filed by defendants which reflects not only the increase in the number of inmates in recent years, but also the defendants' increased awareness that they have nothing to lose by filing such petitions. In most cases, this court dismisses these petitions because the claims or allegations are meritless. Nonetheless, most of these petitions will be filed in habeas form with the federal courts and will be disposed of once again by those courts. In this respect, the state Attorney General's office reports that, as of May 3, 1989, there were 358 petitions for writs of habeas corpus pending in federal district courts to which the state had responded. Such petitions, of course, are not decided by the federal

court until after the inmate has pursued his remedy in state court. Meanwhile, the number of Rule 37 petitions in this state continues to rise. As of May 3, 1989, 108 Rule 37 petitions and 162 *pro se* motions have been filed in this court since January 1, 1988, and in addition to those petitions, and for the same period of time, this court's legal staff has answered 1,910 letters from inmates, who generally are, in some form or another, seeking relief.[2] By way of comparison, this court handled only forty-three Rule 37 petitions for the entire year of 1983; for that same year, the court responded to approximately 900 inmate letters.

■ Having now benefited from years of experience and reviews of post-conviction claims, we abolish Rule 37 recognizing how this state's post-conviction Rule has served to cause the review of criminal convictions to become an interminable process, rather than to improve the system of justice, as this court originally intended by adopting such remedies. *In re: Rule 37, Rules of Criminal Procedure*, 293 Ark. 609, 732 S.W.2d 458 (1987). Our action today will cause convicted criminal defendants to assert their claims and defenses on direct appeal rather than to allow such defenses years later, which is possible under present post-conviction remedies. In our view, this new expeditious procedure will have a beneficial effect of placing both state and federal courts in a position of considering the more legitimate and serious claims a petitioner may have when seeking relief from a questionable verdict. On the other hand, a defendant will have less opportunity to misuse the federal and state systems to develop legal theories that unnecessarily prolong meritless cases. For the reasons stated above, we abolish Rule 37 effective July 1, 1989, but in abolishing Rule 37, we issue a per curiam this date that provides that persons, who have been convicted and sentenced during the existence of Rule 37, may still proceed under that Rule. By the same per curiam, we amend Rule 36.4 to provide that a defendant may assert his or her claim of ineffective counsel on direct appeal.

Now, we turn to the merits of Whitmore's Rule 37 petition. In 1987, Whitmore was found guilty by a jury of capital felony

---

[2] These figures do not include the post-conviction petitions that have been filed with and are pending in the state trial courts.

murder in the 1986 stabbing death of Essie Mae Black. We affirmed, *Whitmore* v. *State*, 296 Ark. 308, 756 S.W.2d 890 (1988), and Whitmore now seeks post-conviction relief pursuant to Rule 37.

Petitioner first alleges that he was not afforded the effective assistance of counsel guaranteed by the constitution and laws of the United States and this state in either the guilt or penalty phase of his bifurcated trial. When determining whether there was effective assistance of counsel, this court evaluates the claim according to the criteria set out by the United States Supreme Court in *Strickland* v. *Washington*. In *Strickland*, the Court held that the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. The criteria apply to a capital sentencing proceeding as well as the guilt phase of the trial since the proceeding is sufficiently like a trial in its adversarial format that counsel's role in the proceeding is comparable to counsel's role at trial. To prove ineffective assistance of counsel under the *Strickland* standard, the petitioner must show that counsel's performance was deficient in that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment. Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived the petitioner of a fair trial whose outcome cannot be relied on as just. Both showings are necessary before it can be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which when viewed from counsel's perspective at the time of trial could not have been the result of reasonable professional judgment. Even if counsel's conduct is shown to be professionally unreasonable, the judgment must stand, unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. A reasonable probability that, but for counsel's conduct the result of the proceeding would have been different, is a probability

sufficient to undermine confidence in the outcome. *Strickland* v. *Washington*, 466 U.S. 668 (1984); *Pruett* v. *State*, 287 Ark. 124, 697 S.W.2d 872 (1985).

Petitioner first contends that counsel was ineffective in that counsel elicited in the guilt phase of his trial that he had been previously convicted of a violent felony more than twenty years before and also failed to object when the state elicited testimony that he had been previously convicted of forgery more than twenty years before trial. Petitioner argues that under Rule 609(b) of the Arkansas Uniform Rules of Evidence the evidence of the prior crimes would have been inadmissible in the guilt phase. Petitioner concludes that the outcome of the guilt phase probably would have been different had the jury not known about the prior convictions.

We do not agree with petitioner's conclusion. There was overwhelming evidence that petitioner killed the victim and stole her money. When the totality of the evidence is considered, it cannot be said that there was a reasonable probability that the jury would have reached a different verdict in the guilt phase had it not known of the prior convictions.

With respect to the conviction, the prosecutor did not inquire as to when the forgery conviction was obtained. Although petitioner now argues that the forgery conviction was more than twenty years old and proof of it was not admissible for the purposes of impeachment under Rule 609, there was evidence admitted which indicated that petitioner had been convicted of forgery in California and that his probation was revoked in 1979 on that charge. For the purposes of impeachment, evidence of the California conviction would have been admissible as not more than ten years had elapsed since petitioner's release from the confinement imposed for the conviction.

Petitioner next asserts that counsel should have objected in the penalty phase to the submission to the jury of the aggravating circumstance that the capital murder was committed for the purpose of avoiding or preventing arrest or effecting an escape from custody. He reasons that because the underlying felony of the capital murder charge was robbery and one of the elements of robbery is that "with the purpose of committing theft or resisting apprehension immediately thereafter a person em-

ploys or threatens to employ physical force upon another," the element of "resisting apprehension immediately thereafter" was duplicated and that such duplication at the time of petitioner's trial was prohibited as "double counting" under *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir. 1985). Petitioner notes that this court held in *O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 52 (1988), that a similar sort of double counting is permitted under the United States Supreme Court's decision in *Lowenfield* v. *Phelps*, 485 U.S. 944 (1988). He states that he does not agree with the interpretation given to *Lowenfield* by this court and further points out that *Lowenfield* was not in effect at the time of petitioner's trial. Petitioner has presented nothing to demonstrate that *Lowenfield* did not properly overrule *Collins*; and, moreover, the state here amended its information to delete the phrase "resisting apprehension immediately thereafter," and the trial court did not include the element of "resisting apprehension immediately thereafter" when it instructed the jury on the definition of robbery.

In a second attack on the aggravating circumstance that the capital felony murder was committed for the purpose of avoiding or preventing an arrest, petitioner argues that the aggravating circumstance is vague and overbroad. We have rejected this argument, *Hill* v. *State*, 278 Ark. 194, 644 S.W.2d 282 (1983); therefore, counsel could not have been ineffective in failing to raise a meritless question.

Petitioner raises an additional claim which this court has already settled: that there is an unconstitutionally impermissible overlap between the capital felony murder statute and the first degree murder statute. He concedes that this court has ruled that such an overlap is not constitutionally defective, *Ruiz & Van Denton* v. *State*, 273 Ark. 94, 617 S.W.2d 6 (1981), and states that the issue is raised again in this petition merely to preserve it for review in federal court.

Petitioner also raises two related allegations of ineffective assistance of counsel: (1) counsel was ineffective in that counsel failed to present available evidence in the guilt phase of petitioner's diminished capacity; and (2) counsel was ineffective in that counsel failed to present in the penalty phase any evidence of mitigating circumstances. Petitioner supports the allegations

with contentions that (1) counsel said in the opening statement that petitioner probably committed the crime but did not have the requisite mental state required to sustain a conviction for capital murder, thus making the question of his competence of great importance to the outcome of the trial; (2) the records outlining his lengthy psychiatric history were available; (3) a history of sexual abuse and incest in his family was available; (4) there was a history of alcoholism which could have been brought out; and (5) he had made statements while he was in custody which suggested that he was out-of-touch with reality. Petitioner also mentions that his father and four children were not contacted by counsel to learn what mitigating evidence they could have presented in the penalty phase. The state expresses its willingness that an evidentiary hearing be permitted in circuit court on the issue of whether counsel was ineffective in respect to the allegations in question, but we do not find that petitioner has met his burden of demonstrating that a hearing is warranted.

This court will not grant an evidentiary hearing on an allegation which is not supported by specific facts from which it can be concluded that the petitioner suffered some actual prejudice. *O'Rourke* v. *State*, 298 Ark. 144, 765 S.W.2d 916 (1989); *Neff* v. *State*, 287 Ark. 88, 696 S.W.2d 736 (1985). Furthermore, the supporting facts must appear in the petition; the petitioner cannot rely on the possibility that facts will be elicited from witnesses if a hearing is held. *See Hayes* v. *State*, 280 Ark. 509, 660 S.W.2d 648 (1983). Petitioner's bald statements that he had a history of psychiatric treatment, alcoholism, and severe dysfunction in his family are not sufficient to establish prejudice because he has offered no details that a particular witness or witnesses could have testified to particular facts which would in reasonable probability have affected the outcome of the trial. The strong presumption in favor of counsel's effectiveness cannot be overcome by the mere claim that petitioner had relatives or other witnesses who might have had some mitigating evidence to present.

Petitioner next argues that Ark. Code Ann. § 5-4-604(5) (1987), which sets out as an aggravating circumstance that the capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody, is unconstitutionally vague and overbroad and fails to

adequately channel the discretion of the jury in assessing the appropriateness of the death penalty. As stated earlier when addressing counsel's attack on the same aggravating circumstance couched in terms of ineffective assistance of counsel, we have held in other cases that the aggravating circumstance is not unconstitutional. *Hill* v. *State*, 278 Ark. 194, 644 S.W.2d 282. We need not reach the issue again in this case, however, because Rule 37 does not provide a means to attack a conviction or sentence on some argument that was not raised at trial when it could have been raised. *See White* v. *State*, 290 Ark. 77, 716 S.W.2d 203 (1986). The only exception is made where an issue is so fundamental as to render the judgment of conviction or sentence absolutely void. *Travis* v. *State*, 286 Ark. 26, 688 S.W.2d 935 (1985). The allegation raised by petitioner is not sufficient to void the judgment or sentence.

Petitioner also argues that the aggravating circumstance that the murder was committed for the purpose of avoiding arrest duplicates an element of the underlying offense and thus constitutes impermissible double counting. As with the last allegation, the question could have been presented at trial and is not sufficient to void the conviction. It is not therefore cognizable under our post-conviction rule. *Travis* v. *State*, 286 Ark. 26, 688 S.W.2d 935.

Petitioner next contends that the Arkansas death penalty statute is unconstitutional because it requires the jury to recommend a sentence of death if it unanimously returns certain written findings that an aggravating circumstance or circumstances exist. This issue is also one which could have been raised at trial and is not sufficient to void the conviction. *Id*. Petitioner argues further, however, that counsel was ineffective for not raising the same issue, a claim which *is* cognizable under Rule 37. We do not find counsel to have been ineffective for failing to raise the question. This court has consistently held that Ark. Code Ann. § 5-4-603(a-c) (1987), is proper, when the jury is instructed in accordance with AMCI 1509, as was the jury in petitioner's case, that it can, by finding that circumstances will not warrant the imposition of the death penalty, return a verdict of life without parole. *See Starr* v. *State*, 297 Ark. 26, 759 S.W.2d 535 (1988); *Clines* v. *State*, 280 Ark. 77, 656 S.W.2d 684 (1983), *cert. denied*, 465 U.S. 1051 (1984).

Petitioner next argues that the overlap between the definitions of capital and first degree murder under Arkansas law makes the statute void for vagueness and gives the prosecutor discretion not permitted under *Furman* v. *Georgia*, 408 U.S. 238 (1972). This argument is again one which could have been raised at trial and is not sufficient to void the conviction. *Travis*, 286 Ark. 26, 688 S.W.2d 935.

■ Petitioner takes issue with this court's interpretation of Arkansas statutory scheme by which we held on appeal that it was not unconstitutional for petitioner's twenty-three year old conviction for attempted robbery to be used as an aggravated circumstance. He further asks this court to review its decision holding that the custodial statements obtained from the petitioner were not in violation of his constitutional rights. As both issues were settled on appeal, the questions will not be addressed again under Rule 37. *Swindler* v. *State*, 272 Ark. 340, 617 S.W.2d 1 (1981).

■ Finally, petitioner contends that he is presently insane and that it is violative of the eighth amendment prohibition against cruel and unusual punishment to execute an insane person. As Rule 37 does not apply to the execution of a sentence, petitioner should make his argument in a clemency proceeding to the Governor.

Petition denied.

PURTLE and HAYS, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. Petitioner's case is presently pending before the United States Supreme Court. Under the circumstances this court should pause in its haste to dismantle post-conviction relief until after the United States Supreme Court decides the matter.

By repealing Rule 37, which was established solely to enable us to correct gross errors committed by trial courts which could not have been presented on direct appeal, we evade our responsibility to oversee the judicial process of criminal justice in this state, and, worse, we deny justice, as well. Rule 37 has come to be perceived as a strategem employed by criminals to delay justice. That, however, has never been the purpose of the rule, any more than it has been the purpose of trial by jury. I do not think the rule

has been abused, nor do I believe this court is overburdened as a result of the petitions resulting from Rule 37.

The majority opinion is primarily intended to soothe the conscience of the court. If this were not the case, we would simply do as we usually do when presented with a petition for Rule 37 relief and deny it without issuing an opinion. Truthfully, the court has been looking for an excuse to abolish this rule for a long time. The sordid facts of this case are used as justification to destroy the only available means of obtaining relief for those who may suffer a miscarriage of justice. Inevitably, meritless petitions are filed on occasion. Granted, our case load is heavy. But then so is the case load in the federal courts. Through this opinion, we are simply trying to channel our Rule 37 petitions into federal courts through actions for habeas corpus. We may thus have cut down on our work load, but we have also increased the burden for other courts and, in some cases, slammed shut the door to justice.

The majority opinion is nothing less than an invitation to the Supreme Court of the United States, or some federal judge, to fashion another Rule 37 or something like it. The result may well be more work for us. In any event, it is not our case load that should be the determining factor in this matter, but rather the demands of justice in each case where a claim for relief is made.

We ought to consider shortening the time limit for filing for post-conviction relief before abolishing Rule 37. A one-year limit, except for void or voidable sentences, seems reasonable to me, at least on a trial basis. The fact that some prisoners may seek relief on meritless grounds does not warrant our closing this avenue to possible relief for the deserving. Even this court is not immune from error—why else do we permit petitions for rehearing? Sometimes appeals seem to have no merit but that is no excuse for abolishing appeals.

The statistics cited by the majority sound horrendous, awful, but upon closer scrutiny a different light is shed on the subject. There are about 5,500 residents in the Arkansas Department of Correction on any given day. The federal courts have limited the Department of Correction to that number at any one time. Because many residents of the Department of Correction are legally released every day, the total number within the department, since January 1, 1988, is actually much greater than the

ceiling imposed by the federal courts.

About 270 Rule 37 and pro se motions have been filed since January, 1988. This amounts to about 4.5 percent of the population in state prisons. During the same period of time, 1,910 letters addressed to the court were written by prisoners. This volume of correspondence amounts to about one out of every three inmates writing one letter once a year. If these figures are adjusted to include those released during the base period, the percentage of inmates writing or petitioning becomes even smaller.

We ought not to take out our frustration with the overburdened system on the residents of our penal institutions simply because the federal courts do not move fast enough to suit us. We ought instead to endeavor to avoid further clogging the federal dockets as well as our own. The majority opinion is the judicial equivalent of a rescuer handing a drowning person a sack of rocks. Our function should be to solve problems, not to exacerbate existing ones or to create new ones.

The per curiam issued today adding a paragraph to Rule 36.4 is little more than window dressing. The average person who has just been convicted may well not realize his defense counsel was ineffective. It frequently takes some time for one to reach such a conclusion. Meanwhile, the convicted person is usually locked away without any reasonable opportunity to investigate or even to decide whether he should undertake the Herculean labor of proving the truth about his counsel.

This change is neither practical nor fair. It will, however, probably cause most of those convicted immediately to charge their trial lawyers with ineffectiveness. In other words, we are in fact increasing rather than decreasing the workload of this court and that of the trial courts. The constitutional right to effective assistance of counsel demands that an accused be given an opportunity to intelligently consider the matter.

The cost of maintaining a person on parole or probation is a small fraction of the cost of keeping that person in custody. The mood of society today is in favor of more and bigger jails, but at the same time the public is unwilling to pay for them. The price of maintaining our prisons will soon be more than all other costs of supporting our government. If we are trying to solve the criminal

population problem for society, we should try to persuade citizens at large and the legal system in particular to look at crime prevention and rehabilitation, instead of focusing on detention and retribution. Bigger jails and longer sentences will not, by themselves, solve our crime problems.

Historically, the welfare of this nation has rested primarily in the hands of the lawyers, and especially the judiciary. We should therefore lead the way with the light of law and reason rather than follow the dictates of popular opinion and passion. The whole of the inmate population should not be included in the retribution required of one of its number. What happens to Jonas Whitmore as an individual is not more important than what happens to the entire criminal justice system.

STEELE HAYS, Justice, dissenting. While I share much of the dissatisfaction with Rule 37 as expressed in the majority's opinion, I believe the fault lies not so much in the use of the rule as in its misuse. But that can be remedied, at least in part, and in my view we should revise Rule 37 rather than abolish it. I respectfully dissent to the order entered in this case.