**STATE of Delaware**

v.

**Lawrence B. DICKENS, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted Aug. 11, 1989.
Decided. Oct. 18, 1989.

Eugene M. Hall, State Prosecutor, Dept. of Justice, for State of Del.

Joseph M. Bernstein, Wilmington, for defendant.

HERLIHY, Judge.

This matter is before the Court on defendant's motion for postconviction relief pursuant to Superior Court Criminal Rule 61. The judge who tried this case has retired from the bench since the trial and the matter was reassigned to me for consideration. Rule 61(d)(1). After preliminary consideration, pursuant to Rule 61(e), the Court appointed counsel for the defendant and directed the State to respond.

I

On August 16, 1979, the defendant Lawrence B. Dickens walked into the Wilmington Bus Station then located at Fourth and Market Streets in search of his girlfriend, Elmira Handy. Spotting Elmira and Myrti Handy, her mother, at the ticket window, the defendant approached the pair and requested to speak with Elmira alone in order

to dissuade her from leaving him. Although Mrs. Handy insisted Elmira remain with her, defendant succeeded in conversing briefly with Elmira alone. Shortly thereafter, Mrs. Handy approached the couple. As Mrs. Handy approached, defendant produced a pistol and aimed it at the floor in order to scare Mrs. Handy. However, when Mrs. Handy continued approaching the couple, defendant aimed and fired the gun hitting Mrs. Handy in the chest fatally wounding her. Defendant continued to fire the pistol subsequently injuring Elmira and a bystander.

The defendant was charged with murder first degree, two counts of attempted murder first degree and possession of a deadly weapon during the commission of a felony. He did not deny the shootings but instead, interposed the defense of extreme emotional distress which, if proven by defendant, would reduce his murder first degree charge to manslaughter. 11 *Del.C.* § 641.[1]

On February 20, 1980, after a trial lasting ten days, a jury convicted defendant of murder first degree (Mrs. Handy), attempted murder first degree (Elmira Handy), the lesser-included offense of assault first degree (the bystander) and possession of a deadly weapon during the commission of a felony.

On appeal, the defendant contended (1) the State violated his right to due process by failing to disclose an eyewitness' written statement and the existence of a six-inch steak knife recovered by police officers at the scene of the shooting, and (2) the admission into evidence of a photograph of the victim's wound was prejudicial and amounted to abuse of discretion by the trial judge. *Dickens v. State,* Del.Supr., 437 A.2d 159, 161 (1981). Affirming the convictions, the Supreme Court held defendant's first claim to be without merit be-

cause the defense had the opportunity to inspect any physical evidence the State had in its possession. *Id.* at 162. Regarding defendant's second claim, the court found the trial judge's admission of the photograph into evidence was "relevant to and probative of the issue of intent" and as such, did not amount to an abuse of discretion. *Id.* at 162–63.

In this motion for postconviction relief, defendant contends the court improperly instructed the jury that the law *presumes,* rather than *infers,* a person intends the ordinary consequences of his voluntary act. Thus, he argues, the jury may have interpreted this presumption as conclusive or shifting the burden of persuasion, relieving the State of proving every element of the offenses beyond a reasonable doubt. If his characterization of the charge is correct, such jury instruction is unconstitutional, violating the Fourteenth Amendment of the United States Constitution. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In response to this Court's Order of July 26, 1989, the State asserts that the defendant's claim is procedurally barred for two reasons. First, it was not brought within the three-year time limit imposed by Superior Court Criminal Rule 61(i)(1) and is, therefore, time barred. Second, since defendant failed to explain his failure to raise the claim at trial or on appeal, it is barred. The State did not respond to the substantive issue raised by the motion.

In his response to the state, the defendant challenges the ability of the court to set a three-year time limit on the ability to bring a claim for postconviction relief. The

---

1. The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this title to the crime of manslaughter as defined by § 632 of this title. The fact that the accused acted under the influence of extreme emotional distress must be proved by him by a preponderance of the evidence. The

accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be. 11 *Del.C.* § 641.

defendant asserts that imposition of such time bar could only be properly enacted by the legislature and not the Court. Defense counsel did not address the State's response or the issue raised in the actual motion.

## II

Rule 61(i)(1) provides:

A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

 There is no constitutional obligation for a state to provide postconviction relief after a defendant has failed to secure relief by direct review of his conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 556–57, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539, 547 (1987); *United States v. MacCollom*, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976); *Whitmore v. State*, 299 Ark. 55, 771 S.W.2d 266 (1989). However, Delaware has traditionally provided for postconviction relief first through Rule 35, now Rule 61. Since a state is not required to provide postconviction relief, it is then by logical implication a state can fashion the remedy as it sees fit. *See Whitmore*, 771 S.W.2d 266. In the case of Rule 61, the time bar was imposed to prevent the bringing of stale claims. This is a legitimate procedural goal and, therefore, justified the adoption of the time limitation in Rule 61. *See United States Ex Rel. Caruso v. Zelinsky*, 689 F.2d 435, 440 (3d Cir.1982).

 Defendant asserts that while a time limitation on postconviction relief is not necessarily *per se* unconstitutional, only the legislature could legally and properly impose such a limitation. This argument ignores the existence of 11 *Del.C.* § 5121 which states:

(a) The Superior Court may, from time to time, adopt and promulgate general rules which prescribe and regulate the form and manner of process, pleading, practice and procedure governing criminal proceedings in the Superior Court from their inception to their termination, including such proceedings before inferior courts and justices of the peace as are preliminary to indictment or information filed in the Superior Court.

(b) Such rules shall not abridge, enlarge or modify the substantive rights of any person, and shall preserve the right of trial by jury as at common law and as declared by the statutes and Constitution of this State.

(c) The Rules of Criminal Procedure for the Superior Court adopted and promulgated by the Supreme Court prior to the enactment of this Code shall take effect upon the enactment of this Code. Any amendments of or supplements to such Rules which the Superior Court may hereafter adopt and promulgate shall take effect upon such date as the Superior Court shall fix in its order adopting and promulgating such amendments or supplements. After the effective date of any rule adopted and promulgated under this section, all laws inconsistent or in conflict therewith shall be of no further force or effect.

(d) Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede or repeal any such rules heretofore prescribed under authority of law.

This enabling legislation, therefore, gives this Court broad rulemaking authority. Once this Court undertook to provide a remedy which it is not constitutionally mandated to do, it is consistent to concurrently provide limitations on that remedy including a time limit.

In its letter of August 4, 1989, the State asserts that *Boyer v. State*, Del.Supr., 562 A.2d 1186 (1989), *per curiam* clearly shows the defendant's claim is time barred under Rule 61(i)(1). In response, the defendant asserts that the Supreme Court in *Boyer* did not address the issue of the Superior Court's power to impose a time limitation on the exercise of postconviction relief. This assertion while perhaps technically

correct is of no moment. In *Boyer*, the Supreme Court stated:

> The due process clause does not preclude a state from adopting a time limitation on a previous remedy if the limiting provision provides a reasonable time within which to invoke the remedy before the time bar becomes effective. [Citations omitted.]

*Id.* at 1187. The Court could not have reached that conclusion unless the Court accepted the underlying premise that the remedy was properly promulgated by a body other than the legislature.

Defendant also argues that, as a general notion, time limitations that bar postconviction relief motions are disfavored. In support of this proposition, the defendant cites *ABA Standards for Criminal Justice*, Standard 22–2.4 which states:

> (a) It is unsound to fix a specific time period as a statute of limitations to bar post-conviction review of criminal convictions. The circumstances that will occasion applications for post-conviction relief are too many and varied to permit of one useful limitations period.

> (b) It should be considered an abuse of process for a person with a tenable or meritorious claim for post-conviction relief deliberately and knowingly to withhold presentation of that claim until an event occurs which he believes prevents successful re-prosecution or correction of the vitiating error. An applicant who has committed such abuse of process may be denied relief on his claim. Courts should not be required to deny relief in all such cases. Abuse of process ought to be an affirmative defense to be specifically pleaded and proved by the state.

> (c) A state has a legitimate interest in avoiding litigation of stale claims. Where an applicant has completed service of a challenged sentence and, belatedly, seeks post-conviction relief, he can be charged with the responsibility of showing present need for such relief. A sufficient showing of present need is made, for example, where:

> (i) an applicant is facing prosecution, or has been convicted, under a multiple offender law and the challenged conviction or sentence may be, or has been, a factor in sentencing for the current offense;

> (ii) an applicant is or may be disadvantaged in seeking parole under a later sentence; or

> (iii) an applicant is under a civil disability resulting from the challenged conviction and preventing him from a desired and otherwise feasible action or activity.

In reviewing this standard, the Delaware Supreme Court Advisory Committee on the ABA Standards for Criminal Justice (1976) made the following comment:

> In conformity with the Standard, Delaware law sets no time limitation on the availability of a Superior Court Criminal Rule 35 motion. It does not, however, enunciate any principle disfavoring stale claims. The Committee believes that Rule 35 should be amended to include specific provisions against stale claims.

*A Comparative Study of the American Bar Association's Standards for Criminal Justice With Present Delaware*, Chapter 14, § 2.4. This comment clearly reflects the concern with stale claims. The time bar provision in Rule 61(i)(1) is consistent with the comment and achieved the goal of barring stale claims. As the Supreme Court stated in *Boyer*, the time limitation in Rule 61(i)(1) is by no means absolute or unconditional, i.e., a claim challenging jurisdiction or stating that a miscarriage of justice occurred may be considered even if more than three years has elapsed. Rule 61(i)(5).

Therefore, it was within the inherent power of the Court under its rule-making authority to fashion the postconviction relief as it sees fit to include a time limitation for bringing a motion for such relief. This case, with a shooting which occurred ten years ago and a trial which concluded on February 20, 1980, illustrates the concern with staleness which the time bar addresses.

### III

The State argues that since the defendant's claim is more than three years after his conviction was final, it is barred. Rule 61(i)(1). The revisor's note to Rule 61 states: "The time limitation in subdivision (i)(1) of Rule 61 shall not apply to any motion for postconviction relief filed before January 1, 1989." The defendant's conviction on April 11, 1980 was affirmed by the Supreme Court on November 3, 1981. He filed this motion for postconviction relief on April 26, 1989, over *eight* years *after* his judgment of conviction was final. The defendant does not assert a newly recognized retroactively applicable right which would bar the application of Rule 61(i)(1), as the *Sandstrom* case, which underlies the defendant's motion, had been decided at the time of his trial. Therefore, the claim is time barred by the provisions of Rule 61(i)(1). See *Boyer, supra.*

### IV

Notwithstanding the validity and applicability of the time limitation provided in Rule 61(i)(1), the merits of the defendant's motion will be addressed pursuant to Rule 61(i)(5). Rule 61(i)(5) provides:

The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the Court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of conviction.

■ Generally, as long as the trial court's jury instructions are "reasonably informative and not misleading, judged by common practices and standards of verbal communication", they will not be grounds for reversible error. *Sheeran v. State*, Del.Supr., 526 A.2d 886, 894 (1987) (citing *Baker v. Reid*, Del.Supr., 57 A.2d 103, 109 (1947)). When reviewing the jury charge, "the entire instruction is considered with

no statement to be viewed out of context." *Haas v. United Technologies Corp.*, Del. Supr., 450 A.2d 1173, 1179 (1982) (citing *Spahn v. People's Ry. Co.*, Del.Supr., 92 A. 727, 729 (1912)). Thus, "some inaccuracies and inaptness in statement are to be expected in any charge". *Baker*, 57 A.2d at 109.

■ No conclusive presumptions exist in the Delaware Criminal Code. 11 *Del.C.* § 306(a).[2] Rebuttable presumptions, however, are preserved, including "a person is presumed to intend the natural and probable consequences of his act". 11 *Del.C.* § 306(c)(1). Additionally, if the court tells the jury of the existence of the presumption, the defendant is entitled to a jury instruction that such presumption does not relieve the State of proving guilt beyond a reasonable doubt. 11 *Del.C.* § 306(e). Under this section, "the notion of 'shifting' burdens is omitted". Delaware Criminal Code with Commentary 65–66 (1973).

■ In this instance, the trial court instructed the jury, in part, as follows:

When I say the defendant must be shown to have caused the death, I mean that the defendant, by his voluntary act, must have brought about the death in question and that the death would not have occurred but for the act of the defendant.

You must also find that the defendant acted intentionally. That is, it must have been the defendant's conscious object or purpose to cause the death in this case.

In considering whether or not the defendant acted intentionally, I call your attention to another statute, which reads in pertinent part this way: "The defendant's intention ... at the time of the offense for which he is charged may be inferred by the jury from the circumstances surrounding the act he is alleged to have done. In making the inference permitted by this section, the jury may consider whether a reasonable man in

---

**2.** There are no conclusive presumptions in this Criminal Code, and all conclusive presumptions formerly existing in the criminal law of this State are hereby abolished.

11 *Del.C.* § 306(a).

the defendant's circumstances at the time of the offense would have had or lacked the requisite intention...." [sic] "When the defendant's intention ... is an element of an offense, it is sufficient to establish a prima facia case for the State to prove circumstances surrounding the act which the defendant is alleged to have done from which a reasonable juror might infer that the defendant's intention ... was of the sort required for commission of the offense."

Likewise, in considering the defendant's state of mind, you should be aware that every person is presumed to intend the natural and probable consequences of his act, and if a voluntary, willful act has a direct tendency to destroy life, the natural conclusion is that the taking of life was intended.

Testimony has been offered to negate the element of intent required to conviction of Murder in the First Degree. In determining the guilt or innocence of the defendant on the charge of First Degree Murder, you must consider whether or not that evidence has raised a reasonable doubt as to the existence of the intent to kill. If the evidence raises such a doubt, then you must find the defendant not guilty of Murder in the First Degree.

If after considering all of the evidence you find that the State has established beyond a reasonable doubt that the defendant, Lawrence B. Dickens, acted in such a manner as to satisfy all the elements which I have just stated at or about the date and place stated in the Indictment, you should find the defendant guilty of Murder in the First Degree. If you do not so find, you cannot find the defendant guilty of Murder in the First Degree, but you may consider whether he is guilty of what is known as a lesser included offense. [Emphasis added.]

Trial Transcript D-206-08 (February 14, 1980).

The defendant asserts the bolded portion of the jury charge "had the effect of shifting the burden of persuasion to the defendant", denying the defendant's right to due process by not requiring the State to prove every element of the offense beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 524, 99 S.Ct. at 2459, 61 L.Ed.2d at 51. Ultimately, "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Id.* at 514, 94 S.Ct. at 2454, 61 L.Ed.2d at 45.

In *Sandstrom*, the defendant, who admitted killing his victim, argued that because of a personality disorder aggravated by alcohol consumption, he did not kill his victim intentionally or purposely, therefore, he should not be guilty of deliberate homicide but of a lesser crime. Thus, the facts of *Sandstrom* are quite similar to the case at bar where the defendant, while never denying the fact that he killed Myrti Handy, claimed he was struggling under severe emotional distress, thus he would not be guilty of murder first degree but of the lesser crime of manslaughter.

In *Sandstrom*, the jury was instructed " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion, they were told only that the law presumed it." *Id.* at 515, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. In the instant case, the jurors were told that they may infer intent from the circumstances surrounding the murder. The paragraph which this defendant claims error begins with the word "likewise", connecting it to the preceding paragraphs instructing on intent. Moreover, in this case, the Court's instruction to the jury merely stated that the jurors *should be aware* that "every person is presumed to intend the natural and probable consequences of his act, and if a voluntary, willful act has a direct tendency to destroy life, the *natural conclusion* is that the taking of life was intended." [Emphasis added.]

The latter half of this sentence explains that such presumption amounts to a permissible inference. *See Rush v. State*, Del. Supr., 491 A.2d 439, 448 (1985). An inference is defined as "a process of reasoning

by which a fact or proposition sought to be established is deduced as a *logical consequence* from other facts, or a state of facts, already proved or admitted." Black's Law Dictionary (5th Ed.1979). A logical consequence may be interpreted as similar to a natural conclusion, arising to an inference. This portion may be regarded as a rebuttable presumption, similar to a permissive inference, and as such,

> leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.

*Ulster County Court v. 'Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777, 792 (1979).

The trial court, prior to instructing the jury on the offenses charged, informed the jury that:

> If in these instructions any rule, direction, or idea is stated in various ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason you are not to single out any certain sentence or individual point of instruction any more than others, but you are to consider all of the instructions as a whole and regard each in the light of each of the others.

Trial Transcript D–210–02 (February 14, 1980). Hence, the permissive presumption was only instructed as a part of the entire jury charge which explicitly reiterated that the State maintained the burden of proving every element of the offense beyond a reasonable doubt and until it was accomplished, the defendant was presumed innocent.

> The defendant, just as every person brought to trial in a criminal proceeding in this State, is presumed to be innocent until his guilt is established to the satisfaction of the jury beyond a reasonable doubt. The burden of proving beyond a reasonable doubt the commission of the offenses rests upon the State. If after carefully considering the evidence you have a reasonable doubt of the guilt of the defendant, you should give him the benefit of such doubt and find him not guilty. But proof beyond a reasonable doubt does not mean that the guilt of the accused must be established to an absolute certainty.

> Reasonable doubt does not mean a vague, speculative or whimsical doubt, nor a mere possible doubt, but a substantial doubt and such a doubt as intelligent, reasonable, and impartial men and women may honestly entertain after a careful and conscientious consideration of the evidence in the case.

Thus, in light of the entire jury charge, a reasonable juror could have interpreted the instruction as if the State proved beyond a reasonable doubt that the defendant voluntarily and willfully destroyed another life, the natural conclusion or inference is that the defendant intended such result. The Delaware Supreme Court has stated the mere likelihood the jury misunderstands the charge falls short of meeting the constitutional requirements of *Sandstrom.* *Hall v. State,* Del.Supr., 473 A.2d 352, 355 (1984).

A comparison of the instruction given in this case to the infirm one given in *Hall* underscores why this instruction is not constitutionally infirm. In *Hall* the instruction used presumed or presumption six times and never used infer or inference. Here, the word "presumed" was used once, and only following three usages of the word infer or inferred. The placement of the language in the body and context of the instruction under attack further eliminates or reduces any infirmity. The *mere likelihood* the jury misunderstood this jury charge does not exist. *Compare Hall,* 473 A.2d at 355. Further, unlike *Sandstrom,* this jury was instructed on inferences.

The defendant next asserts that the jury instruction may have been interpreted as a conclusive presumption or shifting the burden of persuasion. The United States Supreme Court has stated that presumptions dealing with intent should not be dealt with by the judiciary and should remain within the sole province of the jury.

It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. It often is tempting to cast in terms of a "presumption" a conclusion which a court thinks probable from given facts....

We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition.... In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary.

*Morissette v. United States,* 342 U.S. 246, 274–75, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952). In *Morissette,* however, the trial court simply refused to charge the jury on felonious intent, stating to the jury:

"And I instruct you that if you believe the testimony of the government in this case, he intended to take it.... He had no right to take this property.... [A]nd it is no defense to claim that it was abandoned, because it was on private property.... And I instruct you to this effect: That if this young man took this property (and he says he did), without any permission (he says he did), that was on the property of the United States Government (he says it was), that it was of the value of one cent or more (and evidently it was), that he is guilty of the offense charged here. If you believe the government, he is guilty.... The question of intent is whether or not he intended to take the property. He says he did. Therefore, if you believe either side, he is guilty." Petitioner's counsel contended, "But the taking must have been with the felonious intent." The court ruled however: "That is presumed by his own act."

*Id.* at 249, 72 S.Ct. at 242–43, 96 L.Ed. at 288.

In this instance, the trial court properly instructed the jury regarding intent. *See* 11 *Del.C.* § 231(a)(1). Moreover, in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the court instructed the jury that malice aforethought, unless proven by the defendant that he acted in the heat of passion, was to be conclusively implied. *Id.* at 686, 95 S.Ct. at 1883, 44 L.Ed.2d at 512. The Supreme Court held that shifting the burden violated the due process clause and the state was required to prove the absence of heat of passion or sudden provocation beyond a reasonable doubt. In this case, as quoted, shortly after the language which the defendant complains of, the Court instructed the jury that the State had to prove all of the elements of murder first degree in order to find him guilty (*supra,* at 100–01).

The claimed constitutionally infirm language appears in the middle of constitutionally proper instructions. A reasonable juror listening to those instructions would understand that the State has a continuing burden to prove *all* elements of murder first degree beyond a reasonable doubt. The Court concludes and finds that defendant's motion does not present a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness in the trial. Rule 61(i)(5).

For the foregoing reasons, the defendant's motion for postconviction relief is DENIED.