**Lyndell SCROGGINS, Appellant,**

v.

**A.L. LOCKHART, Director, AR Dept. of Corrections, Appellee.**

No. 90–1749.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1990.

Decided June 4, 1991.

Rehearing Denied July 19, 1991.

---

Diane S. Mackey, Little Rock, Ark., for appellant.

J. Brent Standridge, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

BOWMAN, Circuit Judge.

Lyndell Scroggins appeals a District Court[1] order dismissing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). We affirm.

I.

Lyndell Scroggins was released from prison in early 1979 and was living in Russellville, Arkansas. On March 17, 1979, he traveled to Little Rock with a childhood friend, Roy "Billy" Long, to attend a concert. Long also was recently released from prison.

The two men never made it to the concert; they stopped at a Little Rock tavern known as the Amble Inn to shoot pool and drink beer.[2] Scroggins claims that he gave Long the keys to his truck when Long told him that he needed to get some money before the concert. After he finished his game of pool, Scroggins went outside to wait for Long to return.

A short distance from the tavern, an armed man wearing a denim jacket and a ski mask entered a Payless Shoe Store. The man, described by witnesses as 5'10" or 5'11" and around 150 pounds, carried away seventy-five to ninety-two dollars in cash. A witness followed the robber as he ran to a blue truck, changed clothes, and entered the Amble Inn with another man.

Scroggins contends that he watched as Long appeared, wearing a ski mask and jacket and carrying a gun. Scroggins further contends that he was unaware of Long's plans but, because of their longstanding friendship, he did not contact the

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. Scroggins claims that during the evening he consumed six to eight beers, three-quarters of a quart of whiskey, some "speed," and also quite a few tranquilizers (to "take the edge" off of the "speed"). *See* Appendix, § 4 at 4.

police. The two men returned to the Amble Inn.

Acting upon witness information, the police located the blue truck and entered the tavern on the heels of Scroggins and Long. The bartender identified the two men as the truck's occupants. The police approached Scroggins and Long, advised them that they were under arrest, and asked them to step outside. A search revealed that Scroggins had fifty-six dollars. Billy Long was found to have fifty dollars and the keys to the blue truck. Scroggins consented to a search of the truck. In the truck, the officers found a ski mask, a denim jacket, and a blue steel revolver. Scroggins admitted to owning the jacket.

Both Scroggins and Long were placed in a police lineup. Witnesses identified Scroggins as the robber. He was charged by felony information with the crime of aggravated robbery.

At trial, Long testified against Scroggins, explaining that Scroggins robbed the store while he waited. The jury returned a guilty verdict against Scroggins, and he was sentenced as an habitual offender to a term of thirty-five years. The Supreme Court of Arkansas affirmed the conviction. *Scroggins v. State*, 268 Ark. 261, 595 S.W.2d 219 (1980).

In 1983, Scroggins learned that before Billy Long died in prison, he purportedly revealed to his brother Irvin that it was he, not Scroggins, who had robbed the Payless Shoe Store. Irvin disclosed this revelation to Scroggins shortly after Billy's death.

On May 7, 1987, over seven years after his direct appeal, Scroggins petitioned for post-conviction relief pursuant to Ark.R. Crim.P. 37.[3] The petition was returned to Scroggins by direction of the Supreme Court of Arkansas on the basis that it was untimely filed and contained no ground for relief that would render void Scroggins' judgment of conviction. Thereafter, on July 7, 1987, Scroggins filed a petition for a writ of habeas corpus in the District Court.

Counsel was appointed, and the Magistrate Judge[4] convened an evidentiary hearing, at which Scroggins and Irvin Long testified. In a ten-page opinion, the Magistrate Judge recommended that Scroggins' writ be denied as procedurally barred. The District Court adopted the Magistrate's proposed findings and recommendations in their entirety and ordered the dismissal of Scroggins' petition.

For reversal, Scroggins contends that the following claims of ineffective assistance of counsel provide sufficient cause for his procedural default: (1) that counsel failed to challenge the voluntariness of Scroggins' consent to search; (2) trial counsel inadequately challenged the identification testimony; (3) trial counsel declined to investigate the circumstances of Scroggins' interrogation; (4) trial counsel refused to allow Scroggins to testify; (5) trial counsel did nothing to prevent the jury from learning of Scroggins' prior convictions; and (6) appellate counsel did not present these claims of ineffective assistance to the Supreme Court of Arkansas on direct appeal. Scroggins also argues that he is the victim of a fundamental miscarriage of justice, and, as such, he should be given the opportunity to present his claims despite his procedural default. We affirm.

## II.

"[A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief." *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Scroggins contends that his claims of ineffective assistance of trial and appellate counsel demonstrate adequate cause.

This contention, however, is unavailing. The performance of Scroggins' trial counsel has not been reviewed by any state court. It was not an issue on direct ap-

---

**3.** Rule 37 recently has been abolished by the Supreme Court of Arkansas. *See Whitmore v. State*, 299 Ark. 55, 771 S.W.2d 266 (1989).

**4.** The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

peal[5], and, although Scroggins' Rule 37 petition did include a lengthy discussion of the matter, the Supreme Court of Arkansas did not consider the petition due to its untimeliness.

Scroggins seizes upon alleged deficiencies in his appellate counsel's performance[6] to excuse this procedural default. However, "the exhaustion doctrine ... generally requires that a claim of ineffective assistance [of counsel] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986) (citation omitted). In this case, Scroggins never presented an ineffective appellate counsel claim to the state courts[7], and he makes no showing of "cause" for this second default. Scroggins' pro se status cannot excuse his procedural forfeit, *see Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir.1988), and his other arguments are inapposite. Because this claim was not presented to the state courts, it may not be used "to establish cause for procedural default or denominated as a ground for habeas relief." *Leggins v. Lockhart*, 822 F.2d 764, 768 n. 5 (8th Cir. 1987), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).

Because Scroggins has failed to show cause for his procedural default, we need not consider the question of prejudice. As the District Court held, Scroggins' claims are procedurally barred.

### III.

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for [a] procedural default." *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649. Although Scroggins' claim to innocence certainly is not incredible[8], we do not believe that application of the cause and prejudice test in this case will result in a "fundamental miscarriage of justice." *Engle v. Isaac*, 456 U.S. at 135, 102 S.Ct. at 1575.

Several witnesses repeatedly selected Scroggins from a lineup in which both he and Billy Long appeared. At trial, these same witnesses again positively identified Scroggins as the robber. Their identifications[9] were based upon Scroggins' voice, his size, and the way he handled himself. *See* Trial Transcript at 29, 32, 39–40, 44. The description of the robber, and of his clothing, given by a witness who followed him from the Payless store further implicates Scroggins. *See id.* at 52–53. On this record, we cannot say that refusal to consider Scroggins' defaulted claims on feder-

---

5. "The only question on appeal is whether the trial court erred in overruling the motion to suppress." *Scroggins v. State*, 268 Ark. 261, 262, 595 S.W.2d 219, 220 (1980).

6. Substantively, this claim appears to be frivolous. "[A]llegations of ineffective assistance of counsel may not be raised for the first time on appeal.... The proper remedy to challenge the adequacy of an attorney's representation is a petition for postconviction relief under [Rule 37]." *Carrier v. State*, 278 Ark. 542, 543, 647 S.W.2d 449, 450 (1983) (citation omitted).

7. As we read his untimely Rule 37 petition, which was filed some *seven* years after his direct appeal, Scroggins focused only upon the errors of trial counsel.

8. We do find it somewhat incredible that Scroggins waited some seven years after his arrest and conviction to assert his claim to innocence.

As the Magistrate noted, this delay is "particularly perplexing," *see* Appendix, § 4 at 9, in light of Billy Long's death in the early 1980's and Irvin Long's revelations in 1983.

9. As Scroggins points out (and as defense counsel pointed out at trial, *see, e.g.,* Trial Transcript at 41), witnesses initially described the robber to police as being 5'10" or so and slender. Long fit this description; he was 5'10" or 5'11" and weighed 150. On the other hand, Scroggins is approximately 6'1" and, at the time of the robbery, weighed around 190. The witnesses, however, explained these inconsistencies to the apparent satisfaction of the jury. One witness testified that she did not provide a good description "because I was scared." Trial Transcript at 29. Another claimed that the robber was "stooped a little bit." *Id.* at 41. Both were certain that Scroggins was the robber and identified him on two separate occasions: in a lineup and at the trial.

al habeas will result in a fundamental miscarriage of justice.

The District Court's dismissal of Scroggins' habeas petition is affirmed.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The same counsel who represented Scroggins at trial also represented him on appeal from his state court conviction. I believe Scroggins has made a sufficient showing of ineffective assistance of counsel under *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986), to establish both cause and prejudice. This would render the finding of procedural default in error and require a hearing on the merits on the ineffective assistance of counsel claim in the following areas: (1) Failure to argue excessive intoxication to demonstrate lack of capacity to consent to the search of the truck; (2) failure to adequately examine the witnesses on the issue of identification; and (3) failure during both the guilt and sentencing portions of the trial to prevent the jury from learning of Scroggins' earlier convictions.

I also believe that the evidence concerning Billy Long, who was with Scroggins on the day of the robbery and allegedly told his brother that he, not Scroggins, had robbed the store, would demonstrate a claim of colorable innocence, and thus injustice.

I would remand for hearing on the merits.