Marion Albert PRUETT *v.* STATE of Arkansas

CR 83-58 697 S.W.2d 872

Supreme Court of Arkansas
Opinion delivered October 7, 1985

126

*Thomas M. Lahiff, Jr.* and *Jeff Rosenzweig*, for appellant.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for appellee.

PER CURIAM. Marion Albert Pruett was found guilty of capital murder and sentenced to death in 1982. We affirmed the conviction and sentence. *Pruett* v. *State*, 282 Ark. 304, 669 S.W.2d 186 (1984), *cert. denied*, ___ U.S. ___, 105 S. Ct. 362 (1984).

After his trial petitioner Pruett was remanded to the United States Department of Justice on an outstanding detainer. According to petitioner, he is now in the custody of the Mississippi Department of Correction under sentence of death from a Mississippi court. Petitioner has never been committed to the Arkansas Department of Correction.

Rule 37.1 provides that postconviction relief under the Rule is available to prisoners in custody under sentence of a circuit court. Although petitioner is not presently under commitment to the Arkansas Department of Correction, he is under sentence of death imposed by an Arkansas circuit court and is incarcerated. Under circumstances where a petitioner is under a sentence of imprisonment or death duly imposed by a circuit court in this state and is in the custody regardless of his place of

incarceration, we will consider a petition to proceed pursuant to Rule 37.

Because petitioner has not been committed to an Arkansas prison, he asked, in a motion filed before this petition, for clarification of the application to his case of Rule 37.2 (c), which states that a petition under the Rule must be filed within three years of the date of commitment. Petitioner asked if he would have three years to file from the time he might be committed to the Arkansas Department of Correction in the future or if the three years began to run when he was incarcerated elsewhere while under sentence from an Arkansas circuit court. That question becomes moot with our acceptance of the petition before us.

Petitioner raises multiple issues, several of which have a number of subpoints. He first contends that a juror at his trial, Richard Allured, was both mentally incompetent and biased against him and his attorney. In an affidavit, Allured avers that attempts were made to induce bias in him against petitioner and the attorney and that the attempts affected his judgment. He does not explain the nature of the attempts or the extent to which his judgment was affected or make any reference to being mentally incompetent. In fact, he relates inadequacies he perceived in the defense and ways that it could have been made more effective.

In an affidavit, a paralegal working for petitioner's present counsel states that Allured recently told him that the attempt to prejudice him occurred when he was given a copy of the newspaper during the trial which contained a fabricated announcement of the engagement of petitioner's trial attorney to Allured's girlfriend.

As substantiation for the allegation that Allured was incompetent at the time of the trial in 1982, petitioner has also attached to his petition a copy of medical reports indicating that Allured was committed to a psychiatric hospital in 1984.

■■■■■■ There is a strong presumption that jurors are unbiased. *Linell* v. *State*, 283 Ark. 162, 671 S.W.2d 741 (1984). The burden is on the petitioner to establish actual bias or demonstrate that a juror was otherwise unqualified. *Urquhart* v. *State*, 275 Ark. 486, 631 S.W.2d 304 (1982). Since the issue of Allured's

mental competence in 1982 could have been questioned at trial or in a motion for new trial, petitioner has the additional burden of showing that Allured's presence on the jury resulted in a deprivation of some constitutional right so fundamental as to void judgment of conviction. Constitutional issues not sufficient to void the judgment are waived if not raised in accordance with the controlling rules of procedure. *Collins* v. *State*, 271 Ark. 825, 611 S.W.2d 182 (1981). A valid judgment is not void simply because a juror may have experienced mental illness at sometime before trial.

Allured's commitment to a psychiatric hospital nearly two years after trial is also insufficient to void the judgment. Even in cases where counsel filed a timely motion for new trial, a post-verdict allegation of juror incompetence will not result in setting aside the judgment unless the defendant produces substantial evidence of incompetence *at the time of trial*, such as an adjudication of insanity made shortly before or after the trial. *See United States* v. *Mauldin*, 714 F.2d 854 (1983), citing *United States* v. *Dioguardi*, 492 F.2d 70, 80 (2d Cir. 1974), aff'g 361 F.Supp. 954 (S.D.N.Y. 1973), *cert. denied*, 419 U.S. 873, 95 S. Ct. 134, 42 L.Ed2d 112 (1974).

Petitioner further challenges the jury by alleging that several jurors were not truthful during voir dire. He names juror J. C. Hodges who petitioner contends has a "distinct preference" for the death penalty contrary to his statement in voir dire. In an affidavit, Hodges states that he believes the death penalty to be less severe than a life sentence.

As in the case of Allured, petitioner offered no objection at trial to Hodges' presence on the panel. Instead, it is apparent that a basis for objecting to his qualification to serve was not discovered until well after trial and is only now put forth as an assault on the judgment. A jury's verdict cannot be impeached merely because an enterprising petitioner can find one juror willing to voice a different opinion than that expressed in voir dire. Proper voir dire of the venirepersons is a function to be conducted in the trial court. Our postconviction rule does not provide a means to attack a conviction on the ground that a juror questioned after trial is heard to give an answer which conflicts with his testimony in voir dire.

█ Petitioner next alleges that the trial court failed to authorize sufficient funds and failed to grant a continuance so that counsel could establish a defense of mental incapacity. We found on appeal that the trial court did not abuse its discretion in denying a continuance which was requested on the ground that petitioner did not learn the name of the physician he wanted to testify until after voir dire of the jury was completed. The denial of other motions for continuances which petitioner cites in this petition was not raised on appeal and cannot be advanced for the first time in a petition for postconviction relief. *Pitcock* v. *State*, 279 Ark. 174, 649 S.W.2d 393 (1983).

Petitioner asserts that he located an expert in forensic psychiatry who would have been exceedingly helpful to the defense but was unable to retain the expert because of monetary or time restrictions. Petitioner acknowledges that the trial court granted funds in excess of the amount provided by Ark. Stat. Ann. § 41-2419 (Repl. 1977) for legal fees and expenses.

█ Although the State must assure the defendant access to a competent psychiatrist to examine him and assist in his defense if the defendant makes a preliminary showing that his sanity at the time of the offense is to be a significant factor at trial, an indigent defendant does not have a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own doctor. *Ake* v. *Oklahoma*, ___ U.S. ___, 105 S. Ct. 1087 (1985). Petitioner, who was examined by psychiatrists at the Arkansas State Hospital, has not shown that he was unable to obtain the assistance of a competent doctor with the funds and time available. More importantly, petitioner waived this issue since it could have been argued in the trial court and on the record on appeal. It was not so raised and does not present a question so fundamental as to void the conviction. *Ruiz* v. *State*, 275 Ark. 410, 630 S.W.2d 44, *cert. denied*, 459 U.S. 882 (1982).

Petitioner's sixth allegation is that the jury instructions were constitutionally inadequate in that the jury was not provided a definition of "mitigation" and was not informed of the function of mitigating circumstances or the burden of proof necessary for a finding of such circumstances. The argument, which should also have been addressed to the trial court, is meritless.

█ The language used by the legislature in naming

the elements of mitigation cannot be said to be vague and beyond the common understanding and experience of the ordinary juror. *Neal* v. *State*, 259 Ark. 27, 531 S.W.2d 17 (1975). With regard to the burden of proof, the jury was instructed that it was not required to be convinced of the existence of a mitigating circumstance beyond a reasonable doubt; the probable existence of a mitigating circumstance was sufficient.

Because petitioner was required to prove the affirmative defense of self-induced intoxication, he contends that the state was not held to the requirement that it prove every essential element of the crime beyond a reasonable doubt. There was no error. The State was required to prove beyond a reasonable doubt all the elements of the offense of capital murder. Proof of the nonexistence of affirmative defenses was not constitutionally required. *Fairchild* v. *State*, 284 Ark. 289, 681 S.W.2d 380 (1984); *See also Moss* v. *State*, 280 Ark. 27, 655 S.W.2d 375 (1983), *citing Patterson* v. *New York*, 432 U.S. 197 (1977). The argument is also one which should have been raised at trial.

Petitioner raises yet again another point which should have been presented in the trial court in his eighth allegation in which he asserts that the trial court erred when it failed to instruct the jury that it could not impose the death penalty unless it found that petitioner had the specific intent to kill. Petitioner argues that there is an unconstitutional distinction between capital murder and first degree murder ostensibly because first degree murder, but not capital murder, requires a finding that the perpetrator acted deliberately.

Petitioner has misconstrued the statute. Our capital murder statute, Ark. Stat. Ann. § 41-1501 (Repl. 1977), provides that capital murder is committed when a person or his accomplice "causes the death of any person under circumstances manifesting extreme indifference to the value of human life" in the course of and in furtherance of, or in immediate flight therefrom, the commission of certain enumerated felony offenses. Petitioner was convicted of kidnapping and murdering the clerk of a convenience store he had robbed. Both kidnapping and aggravated robbery are felonies designated by statute as underlying felonies of capital murder. The wording of the statute, i.e., conduct manifesting extreme indifference to human life, indi-

cates that the perpetrator of capital murder must act with deliberate conduct which culminates in the death of some person. *See Owens* v. *State*, 283 Ark. 327, 675 S.W.2d 834 (1984); *Clines* v. *State*, 280 Ark. 77, 656 S.W.2d 684 (1983).

 On appeal, petitioner argued that the prosecutor improperly commented on his failure to testify by asking a witness who was a psychologist if he put his patients, one of whom was petitioner, under oath. Petitioner seeks to relitigate the question now, but since it was settled adversely to him on appeal, it cannot be argued again in a petition under Rule 37. *Holloway* v. *State*, 276 Ark. 120, 632 S.W.2d 428 (1982); *see also United States* v. *Frady*, 456 U.S. 152 (1982).

 Petitioner further complains that the State commented on his right not to testify when it included his name in voir dire as one of the potential witnesses. The mere recitation of petitioner's name in the list does not show that he suffered any actual prejudice. Also, an objection could have been made at the time if there were a basis for one.

Petitioner, who is white, next cites statistics to support his allegation that the death penalty is unconstitutional because it is discriminatorily applied to defendants who are poor, black and have killed a white person. Petitioner also contends that the death penalty was not appropriate since his offense does not reflect an unusually depraved mind when he is compared with others who have committed murder, and when compared to other capital offenders, there is no constitutional basis to distinguish him from defendants on whom the death penalty was not imposed. He again challenges the "death qualified" jury as he did on appeal.

 We have held consistently that the death penalty as provided for by our statute is constitutional. *Simmons* v. *State*, 278 Ark. 305, 645 S.W.2d 680 (1982). It is not error to empanel a death qualified jury. *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983). On appeal, this Court conducted a comparative review of petitioner's case and found no ground to set aside the death penalty.

 Petitioner alleges that the prosecutor made an improper closing argument in the first phase of his trial when he said that petitioner had been given the best defense possible. He

further asserts that the prosecutor's closing argument in the sentencing phase was also improper in that it did not give a complete, correct statement of the law on mitigating and aggravating circumstances and contained an expression of personal opinion about the appropriateness of the death penalty. Neither point was raised in the trial court and neither is sufficient to void petitioner's conviction.

Petitioner's last claim of constitutional error is that he was forced to expend his peremptory challenges to excuse venirepersons who were biased by pretrial publicity. As we said on appeal, the trial court meticulously tried to select a fair and impartial jury. Petitioner's allegations of juror bias arising from pretrial publicity are not substantiated in this petition and are but a reworking of arguments made at trial and on appeal.

Finally, petitioner alleges ineffective assistance of counsel, an assertion which must be examined in light of the criteria set out in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). In *Strickland*, the Court held that the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. The criteria apply to a capital sentencing proceeding as well as the guilt phase of the trial since the proceeding is sufficiently like a trial in its adversarial format that counsel's role in the proceeding is comparable to counsel's role at trial.

To prove ineffective assistance of counsel under the *Strickland* standard, the petitioner must show that counsel's performance was deficient in that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived the petitioner of a fair trial whose outcome cannot be relied on as just. Both showings are necessary before it can be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner has the burden of overcoming that presumption by identifying the

acts and omissions of counsel which when viewed from counsel's perspective at the time of trial could not have been the result of reasonable professional judgment. Even if counsel's conduct is shown to be professionally unreasonable, the judgment must stand, unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. A reasonable probability that, but for counsel's conduct the result of the proceeding would have been different, is a probability sufficient to undermine confidence in the outcome.

None of counsel's errors as alleged by petitioner overcomes the presumption that counsel was effective. He first contends that counsel failed to investigate petitioner's background. As support for the allegation, he provides the affidavits of petitioner's father and a married couple who knew petitioner in his youth. The father states that he could have testified that petitioner had been in no trouble until after graduation from high school and that petitioner's execution would hurt the family. The couple avers that petitioner was of good character until he began using drugs. Although it is possible that another attorney might have chosen to call petitioner's parents and the couple to testify in the sentencing phase, petitioner has not demonstrated that their testimony was of such import that he was denied a fair trial by the failure to contact them before trial or call them to testify.

Petitioner next argues that counsel should have requested more than twelve peremptory challenges in light of pretrial publicity. He also alleges that counsel should have questioned the jurors about their attitude on drug abuse. As we found no basis on appeal or in this petition for concluding that the jury was biased, the allegations are without foundation.

Petitioner next reiterates his contention that the jury instruction on the affirmative defense of intoxication was error by alleging that counsel was remiss in not objecting to the instruction. Since the instruction was proper, counsel was not wrong to accept it.

At the conclusion of his arguments of counsel ineffectiveness, petitioner makes a series of general statements that if counsel had investigated mitigating evidence of friends and family, he would have learned of substantial mitigating evidence which would have offset the aggravating circumstances. He does

not explain what specific evidence was available beyond that in the affidavits previously mentioned.

Petition denied.

PURTLE, J., not participating.