DECISION.
Petitioner Michael Bies appeals from the trial court's order dismissing his petition for postconviction relief brought pursuant to R.C. 2953.21. The trial court held that an evidentiary hearing was not necessary to determine the issues that Bies raised in his petition and, concurrent with its entry dismissing the petition, journalized its findings of fact and conclusions of law. Bies asserts four assignments of error. Because we find no merit in any of the assignments of error, we affirm.
 Assignment of Error No. 1
In his first assignment of error, Bies argues initially that the trial court erred by adopting nearly verbatim the findings of fact and conclusions of law proposed by the prosecutor. This court has previously rejected such claims absent any evidence of prejudice. See State v. Combs (1994), 100 Ohio App.3d 90, 110,652 N.E.2d 205, 218 (citing other cases).
Bies also argues that "[t]here is no record of the capital trial in this Court," which is simply incorrect because the record has been certified to us.
Bies further asserts that his attorney was denied any access to the record while it was in the clerk's office. We note that the state has submitted that the record was present and freely accessible. The affidavit proffered by Bies in support of this claim establishes only that a paralegal with the Ohio Public Defender's Commission was advised by the exhibit clerk that documents or photographs were contained in the exhibit room. According to the affidavit, the exhibit clerk further advised the paralegal that the exhibit room did not have a photocopier, and that a court order was required to remove the materials. Later, upon mutual agreement, the paralegal returned with a portable photocopier. According to the paralegal in her affidavit, "[U]pon examining the evidence I was made aware that the documents and/or photographs compiled within the exhibit boxes were expansive and beyond the capabilities of the portable photocopier." The exhibit clerk then once again advised the paralegal that she should obtain a court order to remove the documents in order to properly photocopy them. According to Bies, the paralegal's affidavit shows that parts of the record were "shielded from public scrutiny" and that his attorneys were denied access. Needless to say, we are not persuaded.
Although Bies argues that the trial court did not have the entire record to review, there is no proof offered to support this statement. Apparently the only basis for this assertion is Bies's dubious claim that he was denied access to the record, from which he infers that the court did not have the record for review. We find this allegation to be wholly speculative and false in its premise. The first assignment of error is overruled.
 Assignment of Error No. 2
In his second assignment of error, Bies asserts that the postconviction process in Ohio is, in his words, "a sham procedure." We recently rejected a similar argument in State v.Fautenberry (Dec. 31, 1998), Hamilton App. No. C-971017, unreported.
Bies also argues that the trial court erred by denying him discovery. We have repeatedly ruled that Ohio's postconviction statutes do no contemplate discovery in the initial stages of the proceedings. Id.; see, also, State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported; State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481 and C-910229, unreported; andState v. Buerger (Dec. 20, 1989), Hamilton App. No. C-880664, unreported.
 Assignment of Error No. 3
In his third assignment of error, Bies argues that the trial court erred by not applying the standards of Civ.R. 12(B) and Civ.R. 56 in dismissing his petition in response to the state's memorandum in response to the petition. This assignment is overruled upon the authority of State v. Moore (Sept. 18, 1998), Hamilton App. No. C-970353, unreported.
 Assignment of Error No. 4
In his fourth assignment of error, Bies asserts that the trial court erred by dismissing his various causes of action without an evidentiary hearing or discovery. This assertion requires that we address each of his causes of action in turn.
1. First Cause of Action
In his first cause of action, Bies asserts that the trial court erred by considering a victim's request for the death penalty contained in a victim-impact statement "which was found in the court's files but which was never formally made part of the file."
As the state remonstrates, no reference is made in the trial court's written sentencing opinion to the victim-impact statement to which Bies refers. The record therefore does not support the contention that the statement entered into the trial court's process of determining whether, as a basis for imposing the death penalty, the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. Further, any error in the consideration of this document would have been corrected by the denovo review of the sentence by this court and the Ohio Supreme Court. Clemons v. Mississippi (1990), 494 U.S. 738,110 S.Ct. 1441; State v. Lott (1990), 51 Ohio St.3d 160, 170,555 N.E.2d 293, 304; R.C. 2929.05.
2. Second Cause of Action
In his second cause of action, Bies argues that he was denied effective assistance of counsel because of his trial attorney's alleged failure to develop and present additional mitigation evidence concerning his "mental illness." In support of this assertion, Bies has presented the affidavit of a criminal defense attorney experienced in capital murder cases, the affidavit of a psychologist who has recently evaluated him, and additional affidavits and medical records. The records document Bies's treatment for psychological disorders and a host of childhood medical problems, including "pneumonia, respiratory infections, a severe case of measles, and ear infections (including one which resulted in a punctured eardrum)." Finally, Bies submitted affidavits from potential mitigation witnesses not called at trial, including a statement from his father admitting that he was abusive.
Because Bies's claims of ineffective assistance of counsel are supported by evidence dehors the record, they are not barred by the doctrine of res judicata. State v. Cole (1982), 2 Ohio St.3d 112,443 N.E.2d 169, syllabus. We note, however, that the affidavit of the criminal defense attorney reviewing the case does not constitute legitimate new evidence because, as we have previously held, such an affidavit is essentially a notarized argument that could and should have raised on direct appeal.State v. Zuern, supra; see, also, State v. Steffen (May 11, 1994), Hamilton App. No. C-930351, unreported.
As for the claims legitimately supported by additional evidence, Bies must show that his trial counsel violated a substantial duty by failing to secure the evidence to present at trial, and that such failure resulted in prejudice. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258; Lockhart v. Fretwell
(1993), 506 U.S. 364, 113 S.Ct. 838; State v. Powell (1993),90 Ohio App.3d 260, 629 N.E.2d 13. As this court has previously noted, a reviewing court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v.Washington (1984), 466 U.S. 668, 690, 104 S.Ct. 2052, 2065.
Although the criminal defense bar frequently criticizes the performance of trial counsel for anything less than the best available practice in the defense field, the Ohio Supreme Court has expressly rejected this as the measuring rod to determine whether counsel is effective. State v. Lytle (1976), 48 Ohio St.2d 391,396, 358 N.E.2d 623, 627; see, also, State v. Post
(1987), 32 Ohio St.3d 380, 513 N.E.2d 754. Although certainly it is the goal to be striven for, the constitution does not guarantee a perfect trial, or even the best available defense. Zuern,supra. As the Ohio Supreme Court has observed, "There are many attorneys who fail to use the best available practices, yet relatively few who are found to be incompetent." Lytle at 396, 358 N.E.2d 627.
Applying these standards to the evidence Bies has submitted, we note that we are hard-pressed to attach much mitigative value to the fact that Bies suffered from a severe case of measles as a child, or a series of ear infections, one of which led to a punctured eardrum. Certainly there is no rule that defense counsel is ineffective for failing to present a defendant's entire medical history in mitigation. Competent trial counsel may well make a strategic decision not to inundate the jury with inconsequential medical information that may trivialize the defense rather than render it more effective.
As for the medical records documenting Bies's depression, suicidal tendencies, hyperactivity, and "schizotypal personality disorder," we note that, during the mitigation phase of the trial, there was a substantial amount of evidence presented concerning Bies's psychological makeup. Specifically, trial counsel presented the testimony of Dr. Donna Winter, a clinical psychologist who had interviewed Bies three times and subjected him to Weschler Adult Intelligence Scale and Bender-Gestalt tests. The former is a scale of intelligence and the latter a screening test for organic brain disease. Additionally, Dr. Winter obtained records of Bies's earlier psychiatric and psychological examinations.
Dr. Winter testified extensively about the abusive nature of Bies's early childhood; his problems with early childhood development; the evidence of neglect; his hospitalizations for dehydration, pneumonia, and encephalitis; his youthful suicide attempts and attempts at self-mutilation; his inability to function normally at school due to disruptive, violent behavior; his placement in a school for children with severe behavioral handicaps, as well as his number of diagnoses for attention deficit/hyperactivity disorder, adjustment disorder with depression, adjustment disorder with mixed disturbance of emotions and conduct, development disorder, and possible bipolarism. She discussed also his history of hearing voices and the potential for schizophrenic disorder. As for organic brain disorder, she testified that this had been mentioned in Bies's history and that his developmental academic disorder was always associated with minimal brain dysfunction. She testified further that Bies had an IQ score of 69, which put him within the range of mild to moderate mental retardation, or in the bottom seven percent of the population with respect to intelligence. She assessed his IQ as no more than that of a third-or sixth-grader.
As for Bies's childhood abuse, Dr. Winter made clear that the evidence supported the conclusion that he was beaten, not spanked. She described him as "very abused" in childhood and gave her opinion that his youthful violent behavior was all learned behavior. She testified that Bies's "chaotic upbringing" was marked by his mother "moving one man in and out of the house," and that his mother had a penchant for "abusive men that beat her." According to Dr. Winter, Bies's mother was "a lady who set no limits." As a result, she testified, Bies often imposed injury upon himself, one time putting alcohol on his skin and setting himself on fire. According to Dr. Winter, Bies does not have "a normal pain threshold."
Dr. Winter concluded that, in addition to low intellectual functioning, Bies has a personality disorder that makes him prone to imitate violence. She stated further that he has "some nonspecific brain damage" that exhibits itself in learning disabilities. She stated that it was "hard to say" whether he possesses a conscience. She described him as "[h]ighly, extremely impulsive, always," which she explained to mean that he does not think about what he is doing, the consequences, or the ramifications. She stated, "He's basically impulse-ridden. Everything about his life, you could call it a whim. Something comes in his head and he does it; he doesn't much think about it." Dr. Winter testified that Bies had been on medication throughout his childhood—Ritalin for hyperactivity, and "major tranquilizers." These medications, she testified, were "meant to control him, keep him under control."
In sum, the jury was given abundant sympathetic information about Bies's psychological makeup and his upbringing. The voluminous medical records that Bies has included in his postconviction petition were summarized effectively by Dr. Winter. The fact that defense counsel did not present live witnesses to support the social history contained in the records does not render his performance ineffective, since the social history was uncontradicted. Live witnesses may well have detracted from rather than strengthened the mitigating nature of the social history that the jury was given through the presentation of Dr. Winter. As we held in Combs, supra, if it is merely cumulative of, or alternative to, material presented at trial, the trial court may deny without a hearing a claim of ineffective assistance of counsel based on defense counsel's failure to present evidence at trial. Combs, supra at 98, 652 N.E.2d at 210.
As for the new psychological evaluation by Dr. Haskins, we note that her conclusions are almost identical to those of Dr. Winter. Specifically, Dr. Haskins found that Bies's childhood was marked by "chaos, neglect, abuse and parental inconsistency and rejection," resulting in "abnormal personality characteristics"; that his intellectual functioning is in the "borderline to mild mental retardation range"; that, as a result of his childhood abuse and neglect, he presented symptoms of anxiety, aggressive behavior, paranoid thinking, post-traumatic stress disorder, depression, and an increased risk of suicide; and that the evidence strongly suggested the presence of central nervous system dysfunction that may affect his cognitive reasoning ability, including nonverbal reasoning functions and his ability to interpret complex events.
As for the possibility of organic brain damage, Dr. Haskins stated that further neuropsychological testing was necessary for an accurate evaluation. She stated that such testing was available at the time of Bies's pretrial evaluations and should have been administered "in order to present to the jury a comprehensive and accurate assessment of Mr. Bies's ability to comprehend the wrongfulness of his behaviors and his capacity to control his conduct at the time of the offenses in question."
Because of her almost identical findings, Dr. Haskins's psychological evaluation of Bies is largely cumulative to the evidence presented by Dr. Winter at trial. In the absence of the type of neurological testing she proposed, it is impossible to know what such testing might demonstrate, and therefore it is purely speculative to conclude that such testing would have produced results that would have swayed the jury to spare Bies's life. We note also that Dr. Winter told the jury that organic brain dysfunction was associated with the type of learning disabilities demonstrated by Bies, and it is clear from her testimony that she assumed that some degree of brain damage was present. Because the jury knew that Bies was abused, neglected, borderline retarded, developmentally disabled, brain-damaged to some unknown degree, and unable to control his impulses due to a personality disorder, it is hard to imagine what more the jury could have been told that might have changed its mind. Obviously the jury and trial court concluded, as did this court and the Ohio Supreme Court, that the aggravating circumstances of the particularly horrific crime that Bies committed—the kidnapping, attempted rape and murder of a ten-year-old boy, Aaron Raines outweighed beyond a reasonable doubt the unfortunate circumstances of Bies's own life. As stated by the Ohio Supreme Court in its denovo review of the sentencing evidence:
 Upon independent weighing, the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The totality of the evidence and circumstances portray a heinous and brutal crime that shocks the senses. A small ten-year-old boy who was afraid of the dark and who had problems walking was tricked into going into two abandoned buildings to earn some money. Once inside, Bies and Gumm made Aaron aware of their sexual intentions and Aaron resisted. But he was not allowed to leave. This clearly constituted kidnapping under R.C. 2905.01. Aaron was then dragged over to another building against his will where the attempted rape took place. After Aaron refused to accede to the sexual desires of his abductors, he was brutally murdered. Bies's participation in these crimes merits the capital penalty to which he was sentenced.
Bies, supra, at 328, 658 N.E.2d at 762.
3. Third Cause of Action
In his third cause of action, Bies claims again that his trial counsel was ineffective by (1) failing to collect records of his mental illness, (2) failing to present to the jury significant information concerning his mental retardation, (3) soliciting "seriously misleading testimony from the court psychologist about mental retardation," (4) failing to request neurological testing, and (5) failing to conduct interviews with Bies's immediate family.
Bies's third cause of action is very similar to his second. We incorporate, therefore, our previous analysis here with respect to the records, the decision not to call additional witnesses, and the presentation of Dr. Winter. We also simply disagree that trial counsel failed to "present to the jury any significant evidence about mental retardation," or that counsel elicited "seriously misleading testimony about mental retardation." Bies does not submit any evidence to support the latter assertion, nor can we find anything in the transcript that appears even slightly misleading or prejudicial to the case in favor of mitigation. Again, the jury was told by Dr. Winter that Bies likely suffers from organic brain damage, that he is borderline mentally retarded, and that he was subject to fits of rage as a child. We find no basis in any of part of this to conclude that Bies's counsel was constitutionally ineffective.
4. Fourth Cause of Action
In his fourth cause of action, Bies claims that his trial counsel was ineffective in the following respects: (1) failing to challenge his confession based upon the fact that he is mentally retarded; (2) failing to challenge jurors for cause; (3) failing to object to jury instructions; (4) conducting an inadequate voirdire; (5) failing to correct alleged errors in the sentencing opinion; (6) failing to request expert assistance to conduct forensic testing of physical evidence; and (7) failing to request expert assistance to challenge the state's procedures in collecting physical evidence. All these claims could and should have been raised on direct appeal, however, and are therefore barred under the syllabus of State v. Cole, supra:
 Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without evidence dehors the record, res judicata is a proper basis for dismissing defendant's position for postconviction relief. (State v. Hester, 45 Ohio St.2d 71, [74 O.O.2d 156], modified.)[1]
In this regard, we note that Bies was represented on appeal by both trial counsel (or, more precisely, one of two attorneys who represented him at trial) and new counsel. We have previously held that where trial counsel is joined by new co-counsel on appeal, the syllabus of Perry applies, since it is presumed that the new attorney added for purposes of appeal will not be restrained from advancing any errors he or she perceives in trial counsel's performance. See Zuern, supra. Although in this case new appellate counsel practiced law with trial counsel, we still adhere to the presumption that new counsel followed his or her professional duty and exercised independent judgment while zealously advocating the interests of the client, even if that duty meant impugning the trial performance of appellate co-counsel.
5. Fifth Cause of Action
In his fifth cause of action, Bies claims that the imposition of the death penalty on a person who is mentally retarded constitutes cruel and unusual punishment. He argues that "[m]entally retarded defendants are comparable to the common law `idiot' who was not morally responsible for his crimes." As this is a claim that could and should have been raised on direct appeal, it is barred under the ninth paragraph of the syllabus ofState v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104:
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
We note further that the Ohio Supreme Court has rejected the argument on its merits in State v. Holloway (1988), 38 Ohio St.3d 239,527 N.E.2d 831.
6. Sixth Cause of Action
In his sixth cause of action, Bies claims that the "Hamilton County Police Department" violated his rights by establishing "standards of practice regarding interrogations" that are constitutionally infirm by allowing for the questioning of mentally retarded persons without the benefit of counsel. As this is a claim that could and should have been raised on direct appeal, it, too, is barred under the syllabus of Perry, supra.
7. Seventh Cause of Action
In his seventh cause of action, Bies asserts that his confession should have been suppressed because "Cincinnati Police officers used an Indiana warrant to compel Kentucky law enforcement officials to arrest [Bies] in order to interrogate him for an Ohio crime." Again, this is a claim that does not depend upon evidence outside of the record and therefore could and should have been raised on direct appeal. The claim is, therefore, barred under the doctrine of Perry, supra.
8. Eighth Cause of Action
In his eight cause of action, Bies claims that his sentences are void or voidable because the state withheld exculpatory evidence, to-wit, the victim-impact statement referred to previously. This claim is barred under Perry, supra.
9. Ninth Cause of Action
In his ninth cause of action, Bies claims that his sentences are void or voidable because of the definition of the phrase "beyond a reasonable doubt" as it appeared in the penalty-phase instructions. This claim is barred under Perry, supra, since it in no way depends on evidence dehors the record.
10. Tenth and Twelfth Causes
In his tenth cause of action, Bies argues that his sentences are void or voidable because the Ohio death-penalty statutes result in the "arbitrary and capricious killing of citizens," because the terms "aggravating" and "mitigating" are not statutorily defined. In his twelfth cause of action, Bies similarly attacks the trial court's alleged failure to adequately define the term "outweigh" in its sentencing instructions. According to Bies, the jurors were required to decide whether the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt without any guidance as to what the terms "aggravating," "outweigh," and "mitigating" meant. Further, Bies charges that the prosecutor contributed to this confusion in the weighing process by his statements to the jury.
In support of this argument, Bies has submitted the affidavit of a professor of linguistics as well as a copy of an article entitled "Dictionaries and Death: Do Capital Jurors Understand Mitigation?"[2] The statements of the prosecutor have, of course, been in the record since they were spoken.
Having read the materials that Bies has submitted, we are convinced that his claim is a challenge to the death-penalty statutes as being void for vagueness. As the Ohio Supreme Court has noted, the postconviction process is not intended as a forum to litigate constitutional issues that could have been raised at trial or on direct appeal, thus relegating courts to "disposing of the action on technicalities or collateral issues, as opposed to the merits." State v. Roberts (1982), 1 Ohio St.3d 36, 39,437 N.E.2d 598, 601. In effect, Bies is asking us, after his conviction has been affirmed on direct appeal, to consider a constitutional argument that could have been, but was not, raised during the trial or the entire process of direct appeal.
Notwithstanding this abuse of the postconviction process, and assuming that his materials constitute some form of new evidence although they appear more in the nature of source material for arguments that should have been made earlier—we simply disagree that the statute is infirm in the sense that Bies claims. We do not find the words "aggravating," "mitigating" or "outweigh" to be beyond the ken of the average juror, or the process of relating each term to the other to be the linguistic swamp that the academician perceives it to be. The aggravating circumstances are exclusively defined by statute. Possible mitigating factors are enumerated. The jury is asked to determine if the former outweighs the latter beyond a reasonable doubt in order to recommend a death sentence. On its face, there is nothing confusing about this process.
Furthermore, we note that, as pointed out by the article Bies submits, several state and federal courts have expressly held that the statutory terms "mitigating circumstance" and "aggravating factor" need not be further defined for the jury. See, e.g., Capev. State (1980), 246 Ga. 520, 272 S.E.2d 487; Pruett v. State
(1985), 287 Ark. 124, 697 S.W.2d 872, 876; Lee Vasseur v.Commonwealth (1983), 225 Va. 564, 304 S.E.2d 644; DeLong v.Thompson (E.D.Va. 1991), 790 F. Supp.594, 610; People v. Dyer
(1988), 49 Cal.3d 991, 264 Cal.Rptr. 386, 782 P.2d 627. Interestingly, the only appellate court quoted in the article submitted by Bies that did decide to require the trial court to provide the jury with a definition of "mitigating," later reversed course and held that the only requirement is that it be evident from the facts and proceedings that the jury was aware of the nature of mitigation. Compare Dix v. Kemp (C.A.11, 1985),763 F.2d 1207, and Westbrook v. Zant (C.A.11, 1983), 704 F.2d 1487, with Peek v. Kemp (C.A.11, 1986), 784 F.2d 1479, 1494.
Finally, we note that the weighing process was conducted de novo by the trial court, this court, and the Ohio Supreme Court, thus correcting any error that may have resulted from any possible confusion among the jurors. Clemons, supra; Lott, supra.
As for the statements of the prosecutor, the subject of their propriety is barred under Perry, supra, since this is an issue that could and should have been raised on direct appeal.
11. Eleventh Cause of Action
In his eleventh cause of action, Bies claims that the definition of "reasonable doubt" given to jury by the trial court in its mitigation charge "unconstitutionally shifted the burden of proof on the issue of punishment and prevented the jury from making its constitutionally required finding of the appropriateness of the death penalty." This is another claim that, not being dependent upon any evidence outside the record, could and should have been raised on direct appeal and is therefore barred under Perry, supra.
12. Thirteenth Cause of Action
In his thirteenth cause of action, Bies argues that his convictions are void or voidable because "the trial court instructed the jury in the mitigation phase that a life verdict must be unanimous." This, obviously, is an issue that could and should have been raised on direct appeal. The claim is, therefore, barred under Perry, supra. We note also that the Ohio Supreme Court has held that a sentence of life imprisonment under R.C. 2929.03(D)(2) must be unanimous. State v. Jenkins (1984),15 Ohio St.3d 164, 184, 473 N.E.2d 264, paragraph ten of the syllabus. The instruction was, therefore, correct.
13. Fourteenth Cause of Action
In his fourteenth cause of action, Bies claims that his sentences are void or voidable because the jury was instructed that it could not be influenced in its deliberations by any consideration of sympathy or mercy. This claim is barred underPerry, supra. The same claim has, moreover, been rejected by the Ohio Supreme Court in State v. Clayton (1991), 61 Ohio St.3d 234,574 N.E.2d 472.
14. Fifteenth Cause of Action
In his fifteenth cause of action, Bies asserts that his convictions "and/or" sentences are void or voidable because "death by electrocution constitutes a blatant disregard for the value of human life, entails unnecessary and wanton infliction of pain and diminishes the dignity of man." As the state points out, however, "there really is no issue here" because Ohio also provides for death by lethal injection. Thus, whatever the horrific nature of the electric chair, Bies has the option of choosing death by another means. As for the argument that death by electrocution diminishes the dignity of man, we need only note that there appears no more ignominious and undeserved manner of death than that suffered by Aaron Raines.
Bies's fourth and final assignment is overruled.
Accordingly, the judgment below is affirmed.
Judgment affirmed.
Doan, P.J., Gorman and Winkler, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] We note that the claim that trial counsel was ineffective for failing to challenge the confession based upon Bies's mental retardation was, in fact, raised on direct appeal and rejected by the Ohio Supreme Court in State v. Bies (1996), 74 Ohio St.3d 320,658 N.E.2d 754.
[2] The article appears in the appendix of the postconviction petition without a citation. It was written by Peter Meijes Tiersema of the Loyola Law School.